# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

**FILED**
JUL - 2 2020
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

UNITED STATES OF AMERICA

v.

**CECILY ANN AGUILAR**

**CRIMINAL COMPLAINT**

CASE NUMBER: W20-141M

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.

From on or about **April 23, 2020 through June 30, 2020,** in **Bell** County, in the Western District of Texas, defendant(s), **did unlawfully and willfully combine, conspire, confederate and agree together and with others to corruptly alter, destroy, mutilate, and conceal an object, or attempt to do so, with the intent to impair its integrity and availability for use in an official proceeding,** in violation of Title **18**, United States Code, Sections **1512(c)(1) and (k)**.

I further state that I am a(n) **Special Agent, Federal Bureau of Investigation,** and that this complaint is based on the following facts:

**SEE ATTACHED AFFIDAVIT**

continued on the attached sheet and made a part hereof: YES

_____
JONATHAN VARGA, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

July 2, 2020                            Waco, Texas
Date                                    City and State

Jeffrey C. Manske
U.S. Magistrate Judge                   _____
Name & Title of Judicial Officer        Signature of Judicial Officer

United States District Court

Western District of Texas, Waco Division

1. I, Jonathan W. Varga, having been duly sworn, depose and say the following is true according to my knowledge and belief:

2. Your Affiant is a Special Agent (SA) of the Federal Bureau of Investigation (FBI), United States Department of Justice. I have been employed as a SA of the FBI for over 16 years and am currently assigned to the San Antonio Division, Waco Resident Agency (WRA) in Waco, Texas. I am currently assigned to a violent crime squad where my responsibilities include enforcing federal criminal statutes, including investigating violent crimes (to include murder, witness tampering, obstruction of justice, and conspiracy to commit a crime) occurring within the Fort Hood military installation. Fort Hood is a place of special maritime and territorial jurisdiction for the federal government. As part of these duties, your Affiant has become involved in the investigation of suspected violations of Title 18, United States Code, § 1512(c) and (k), that is, conspiracy to corruptly alter, destroy, mutilate, or conceal an object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding. The facts in this affidavit come from your Affiant's personal observations, his training and experience, and information obtained from other law enforcement officers and witnesses.

3. Your Affiant is currently involved with US Army Criminal Investigative Command (USACID), Texas Rangers, US Marshal's Service (USMS), and other agencies regarding the activities US Army Specialist Aaron Robinson and Cecily Aguilar.

4. The statements contained in this affidavit are based on information provided to your Affiant by other law enforcement officers who investigate these types of crimes and through his personal investigation. Your Affiant has set forth herein the facts I believe are necessary to establish probable cause that said violation does exist.

5. Since this affidavit is being submitted for the limited purpose of securing an arrest warrant, your Affiant has not included each and every fact known to him concerning this investigation. Your affiant has set forth only facts that I believe are necessary to establish probable cause.

### Background of the Investigation

1. On 04/23/2020, USACID was notified by a Captain in the Regimental Provost Marshal, 3rd Cavalry Regiment, Fort Hood, TX (FHTX), that Private First Class (PFC) Vanessa Guillen had been reported missing by her unit.

2. A witness stated that PFC Guillen left the arms room where she was working to visit the arms room at another location at Fort Hood, one controlled by Specialist (SPC) Aaron Robinson, in order to confirm serial numbers for weapons and equipment. The witnesses verified that PFC

Guillen left the arms room without her US Army identification card, bankcard, or car keys with her barracks key attached. The witness stated that her property was still in the arms room when he secured the arms room for the day.

3. A search of PFC Guillen's phone records revealed the last outgoing text message from her phone was a message to SPC Robinson's phone. SPC Robinson was one of the last people known to have seen PFC Guillen. On 04/22/2020, SPC Robinson stated he texted PFC Guillen to inform her he was in the arms room. He said she read serial numbers for equipment and afterward, he gave her paperwork and the serial number for a .50 caliber machine gun which needed to be serviced. He said she left the arms room and he believed she would have next gone to the motor pool. Witnesses at the motor pool prepared to receive the paperwork from PFC Guillen stated she did not arrive with the papers.

4. On 04/28/2020, USACID interviewed SPC Robinson. Among the things he said concerning his activities on 4/22/2020, SPC Robinson stated that after he finished his work, he went to his off-post residence he shared with his girlfriend Cecily Aguilar, and did not leave the rest of the night, except around 6:30pm when he had to come on post to sign on to a government computer to enroll in training.

5. On 05/18/2020, two witnesses were interviewed who stated that on 4/22/2020, they observed SPC Robinson pulling a large "tough box," with wheels, that appeared very heavy in weight, coming out the arms room, the same room where SPC Robinson worked. The two witnesses observed SPC Robinson load the "tough box" into his vehicle and drive away.

6. On 05/19/2020, SPC Robinson consented to a search of his cellular phone by UFED extraction. A review of the phone call logs revealed SPC Robinson called Aguilar multiple times during the night of 04/22/2020, and as late as 03:30am on 04/23/2020. SPC Robinson also received calls from Aguilar throughout the day.

7. Cecily Aguilar, girlfriend of SPC Robinson, was interviewed on 06/19/2020. Aguilar stated she was with SPC Robinson all night on 04/22/2020. She was asked why SPC Robinson would call her after midnight if he was at the residence with her. She stated she could not find her phone and had SPC Robinson call the phone to help her find it. This statement, however, is inconsistent with the lengths of the calls. SPC Robinson called Aguilar several times throughout the night and the calls after midnight were for lengths greater than one minute.

8. Aguilar, during a re-interview, stated that she lied in her previous statement. She stated that she did leave her residence because one of the ways she copes is by taking long drives. Aguilar stated that she was with SPC Robinson on the night of 04/22/2020 where they took a long drive to a park in Belton, Texas to look at the "stars." Aguilar stated that after going to the park they returned home.

9. An analysis of phone records pertaining to SPC Robinson's telephone was conducted. A review of the location data revealed that at approximately 1:59am, 04/23/2020, SPC Robinson's cell phone was identified in the vicinity of FM 436 and West Main St, in Belton, TX; specifically, on or around a bridge. SPC Robinson's cell phone then tracked along the Leon River in a "northward direction." SPC Robinson's cell phone remained in the area for approximately 2 hours.

10. Aguilar's cellular telephone location data was also analyzed later and it revealed she and SPC Robinson were near the Leon River together on 04/23/2020 and 04/26/2020.

11. Based upon this data, personnel from USACID, Bell County Sherriff's Office (BCSO), and Texas Rangers, searched the Leon River site in Belton, Texas on June 21, 2020. A burn site with disturbed earth was identified. What appeared to be the burned remains of a plastic tote or tough box were found nearby in an area near where SPC Robinson's phone pinged. The soil beneath the burn site was remarkably softer and moister than the soil found at similar depths merely feet away and had an odor of decomposition. However, no remain were located.

12. About 1:00pm, 06/30/2020, USACID was notified that contractors working on a fence adjacent to the Leon River in Belton, TX, discovered what appeared to be human remains. USACID, along with FBI, BCSO, USMS, and TX Rangers, searched the area, and identified scattered human remains that appeared to have been placed into a concrete-like substance and buried.

13. About 8:30pm, 30 June 2020, Aguilar was interviewed and admitted that SPC Robinson told her that on 4/22/2020, he struck a female soldier in the head with a hammer multiple times at his arms room, killing her on Fort Hood. Affiant knows that this arms room is located within the special maritime and territorial jurisdiction of the United States and in an area of exclusive federal jurisdiction. Aguilar advised the female soldier never made it out of the Army alive (referring to Fort Hood). SPC Robinson then placed her in a box and moved the box to a location near the Leon River in Belton, Texas. Paragraphs 14 through 19 are a summary of Aguilar's statements to law enforcement on 30 June 2020.

14. On the evening of 4/22/2020 or the early morning of 4/23/2020, SPC Robinson picked Aguilar up at a gas station she worked at and took her out to a site near the Leon River and near a bridge. A box with wheels and handles was already at this site. SPC Robinson walked Aguilar over to the woods and opened up a box for Aguilar and she saw a dead female inside the box. Aguilar, on a later date, identified the dead female as Vanessa Guillen.

15. To more easily dispose of and to conceal the body of the dead female, SPC Robinson and Aguilar proceeded to dismember the dead female's body. They used a hatchet or ax and a machete type knife. They removed the limbs and the head from the body. SPC Robinson and Aguilar attempted to burn the body; however, the body would not burn completely. They placed the dead female in three separate holes and covered up the remains.

16. SPC Robinson and Aguilar returned to the site on a later date. This date was believed to be on 04/26/2020 according to cellular telephone site analysis. Prior to their return, they obtained hairnets and gloves. Aguilar purchased a bag of what she referred to as concrete from someone utilizing Facebook messenger.

17. On that date, SPC Robinson and Aguilar uncovered the remains of the dead female, removed them, and continued the process of breaking down the remains of the dead female. The remains were then burned again along with their gloves and hairnets. SPC Robinson and Aguilar placed the remains back in the three holes with the concrete purchased earlier.

18. SPC Robinson and Aguilar burned their clothes later that night at their residence.

19. SPC Robinson and Aguilar concocted the story about Aguilar and Robinson taking a long drive to a park in Belton (see paragraph 8) as an alibi.

20. Prior to June 30, 2020, SPC Robinson had been confined to his barracks room on Fort Hood; however, he absconded from Fort Hood that night. At the request of law enforcement, Aguilar placed a controlled telephone call to SPC Robinson wherein he never denied anything they did to Vanessa Guillen and her body. SPC Robinson texted Aguilar pictures of the news articles advising of recovered human remains. In a later controlled telephone call, SPC Robinson advised, "baby they found pieces, they found pieces". This was referring to the human remains recovered near the Leon River.

21. Aguilar continued to assist law enforcement with locating SPC Robinson as he was on foot in Killeen, Texas. SPC Robinson was approached by law enforcement; however, he brandished a pistol and shot himself in the head, killing himself.

22. The identification of the human remains recovered is still pending.

Conclusion

1. Based upon the aforementioned facts, there is probable cause to believe that a violation of Title 18, United States Code, § 1512 (c) and (k), that is, conspiracy to corruptly alter, destroy, mutilate, or conceal an object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding was committed by Cecily Aguilar. Additionally, the original offense of murder was committed on the Fort Hood military installation, located within the Waco Division of the Western District of Texas, a place of special maritime and territorial jurisdiction of the federal government. A murder at Fort Hood, and any related obstruction offenses, would be pursued as a criminal proceeding in United States District Court, Western District of Texas.

2. Accordingly, your Affiant respectfully requests that an arrest warrant be issued for Cecily Aguilar.

FURTHER AFFIANT SAYETH NAUGHT.

_____
JONATHAN W. VARGA, Special Agent

Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO before me on the __2nd__ day of July, 2020.

_____
HONORABLE JEFFREY C. MANSKE

UNITED STATES MAGISTRATE JUDGE